IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

ROBERT A. HAYDEN, JR., )
KENNETH J. SOWERS, )
ANTHONY J. ZANGHI, on behalf of )
themselves and others similarly situated, )
) CIVIL ACTION NO. 3:2007-201
Plaintiffs, )
)
v. )
) JUDGE GIBSON
FREIGHTCAR AMERICA, INC., )
)
Defendant. )

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

This matter comes before the Court on Defendant FreightCar America Inc.'s Emergency Motion for Stay of the January 11, 2008 Preliminary Injunction Order Pending Appeal (Document No. 85) and Plaintiffs' Motion For Civil Contempt (Document No. 95). For the reasons stated herein, the Emergency Motion for Stay is denied and ruling on the Motion for Civil Contempt is deferred.

The Defendant moves for a stay pending resolution of its interlocutory appeal[1] to the Court of Appeals for the Third Circuit regarding this Court's issuance of a preliminary injunction that required the Defendant to immediately reinstate members of the two subclasses certified by the Court, which amounts to approximately 182 employees. *See generally*, Defendant's Motion; Order of Court dated January 11, 2008 (Document No. 83).

---

[1]*See* Notice of Appeal, (Document No. 84).

In evaluating requests for a stay pending an appeal of interlocutory orders, district courts are bound by Federal Rule of Civil Procedure 62(c) which reads in pertinent part: **"(c) Injunction Pending an Appeal.** While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights." The Supreme Court in recognizing this rule has set forth four factors that govern a court's determination of granting a stay:

> Different Rules of Procedure govern the power of district courts and courts of appeals to stay an order pending appeal. See Fed.Rule Civ.Proc. 62(c); Fed.Rule App.Proc. 8(a). Under both Rules, however, the factors regulating the issuance of a stay are generally the same: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776, 107 S.Ct. 2113, 2119, 95 L.Ed.2d 724, 733 (1987). The Defendant utilizes these factors in its analysis to argue that a stay is appropriate in this instance. As expected, the Plaintiffs disagree.

As to the first factor, the Court is keenly aware of the effect of its order and the recent issues addressed by Third Circuit in other ERISA actions, including Judge Ambro's comment in his concurrence in *Eichorn* which the Court quotes here:

> Because of the complexity of much ERISA litigation (not to mention the shortage of federal judges), it tends to move slowly. The very predicate of an interference claim is that the defendant is keeping the plaintiff from benefits to which he would otherwise be entitled. See 29 U.S.C. § 1140. The longer that interference continues, the less likely it is that injunctive relief will provide a workable remedy. Even in the typical case-one in which an employee is fired to prevent benefits from vesting, see Slip Op. at 31-the propriety of reinstatement wanes over time as the employee ages and the nature of the employer's business changes. In these cases, time is on the defendant's side in an

2

insidious way, for by drawing out the litigation it has a chance of mooting the entire suit. The end result is that for plaintiffs like Eichorn the case is won or lost at the preliminary injunction stage, for only that remedy will prevent the case becoming moot while discovery proceeds. This is both unfair and against the grain of our civil justice system, which couples notice pleading with liberal discovery rules to ensure that " 'the gravamen of the dispute [is] brought frankly into the open for the inspection of the court.' " *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1202 (2d ed.1990)). Here, accepting the opportunity for discovery (or merely responding to a motions-happy defendant) can render worthless the proof the plaintiff produces. It is hard to imagine that this narrow window of relief is the result Congress intended.

*Eichorn v. AT & T Corp.*, 489 F.3d 590, 592 -593 (3d Cir. 2007)(Ambro, J. concurring) *cert. denied*, 76 USLW 3287 (U.S. Dec. 3, 2007)(No. 07-280). For the reasons already stated in the Court's lengthy opinion on the issues of class certification and preliminary injunction, the Court believes that the Defendant has not set forth a strong showing of success on the merits or a strong possibility of success in obtaining a reversal of the Court's order before the Third Circuit. The Defendant assumed the Court accepted all of the Plaintiffs' proposed facts in making its present motion and briefing. See Defendant's Brief (Document No. 85-3), p. 7. The Court has addressed the issues that the Defendant raised with respect to the Court's order in its Memorandum Opinion dated February 8, 2008 (Document No. 103). Additionally, the Court is well aware that this case presents timely issues on the subject of ERISA. However, after weighing all of the factors in evaluating a motion for preliminary injunction, including but not limited to the irreparable harm to befall both subclasses had the Defendant's Board of Directors sought to implement a facility closure in Johnstown prior to resolution of the motion for preliminary injunction, or this civil action generally, the Court found it appropriate to grant the preliminary injunction.

3

In its review of the irreparable harm that could occur to the Defendant in the absence of a stay, the Court does not find a possible loss of the Defendant's ability to appeal the present issues it raises with respect to this preliminary injunction, despite Defendant's contrary assertion. *See* Defendant's Reply (Document No. 93), p. 3. The only case from the Third Circuit addressing the four factor balancing test set forth in *Hilton* is *Republic of the Philippines v. Westinghouse Electric Corp.*, 949 F.2d 653 (3d Cir. 1991). Although that opinion concerned Federal Rule of Appellate Procedure 8(a) regarding stays granted by appellate courts, the Court feels comfortable relying on this opinion in light of the Supreme Court's finding in *Hilton* that the factors pertaining to issuance of a stay are essentially the same under Rule of Appellate Procedure 8(a) and Rule of Civil Procedure 62(c).

In the circumstances presented in *Westinghouse* the Third Circuit analyzed the issues of whether in the absence of a stay, an appeal would become moot and without such a stay whether irreparable harm was present. *Westinghouse* at 658. The Court concluded that "the fact that the decision on the stay may be dispositive of the appeal in some case is a factor that an appellate court must consider, but that alone does not justify pretermitting an examination of the nature of the irreparable injury alleged and the particular harm that will befall the appellant should the stay not be granted." *Id.* In *Westinghouse*, Westinghouse argued that the court-ordered unsealing of certain documents that were to be used in an anticipated public trial where "the substance of much of [the] material [was] already public..." would moot an appeal of that order. *Id.* at 659 (internal quotations omitted). The Third Circuit concluded that no "particularized harm" was proven. *Id.*

In the case *sub judice*, the Court fails to see how, in the absence of a stay, the Defendant's appeal would become moot. The only irreparable harm to the Defendant which has been presented is the fact

4

that complying with the preliminary injunction by implementing reinstatement for a minimum of one day will result in *some* of the Plaintiffs in the special pensions subclass satisfying the required service time of their pensions. Not all members of the special pension group subclass will have attained the necessary service time if they returned to work today or if they were previously returned to work on January 11th. Therefore, the entire class is not granted relief by denial of a stay. Their appeal is not mooted by their return to work. Members of the deferred vested pension subclass[2] would also not vest their pension rights by returning to work at this time because they only have accrued less than four years of service with the Defendant.

The only harm resulting from either a stay or reinstatement is a possible economic harm. Although the Court avoided considering the economic harm of lost employee wages and benefits in its preliminary injunction analysis in order to avoid having such benefits which are unrelated to ERISA (and which cannot be included as part of a remedy in an ERISA case) affecting the outcome of an ERISA interference claim, such considerations are relevant here because a preliminary injunction has been ordered and employee wages and benefits will be affected by granting or denying a stay of the reinstatement. If a stay is ordered, the Plaintiffs will not receive wages and other benefits exclusive of accrual of their pension rights and related welfare plan rights, and as such wages and benefits are not recoverable through the Plaintiffs' ERISA claim such loss will be permanent, *see Eichorn v. AT&T*, 484 F.3d 644, 654-657 (3d Cir. 2007) *aff'd* 489 F.3d 590 (3d Cir. 2007); if a stay is denied and the Defendant prevails on appeal, the wages and benefits paid to the reinstated employees cannot be

---

[2]According to the Plaintiffs, this subclass numbers 54 as of January 11, 2008. See Declaration of Tom Vatavuk (Document No. 98), ¶ 3.

5

recovered since they are incidental to the remedy of reinstatement rather than being part of the remedy. If the Plaintiffs prevail on appeal in the absence of a stay, all wages and benefits paid during the pendency of the appeal were properly paid as a result of the Plaintiffs' reinstatement. These economic harms between the parties are in balance and therefore counter each other in this analysis.

The Defendant argues that harm is also present in the "logistical difficulties...of [a] recall" and the fact that no work is present at the Johnstown facility. Defendant's Brief (Document No. 85-3), p. 5. The Court is puzzled by the "logistical difficulties" argument because the Defendant indicates that "the ability to produce railcars at the Johnstown facility has not been compromised." Declaration of Ken Bridges (Document No. 99) ¶ 4. Additionally, the Third Circuit has recognized in the context of preliminary injunctions, that when a party brings an injury "upon itself," it "can hardly claim to be harmed". *Kos Pharmaceuticals, Inc. v. Andrx Corp.*, 369 F.3d 700, 728 (3d Cir. 2004). The Court has found that Defendant furloughed its workforce and then shifted production pursuant to FCA's motivation to prevent accrual and vesting of special pensions. The Defendant currently employs those workers at the Johnstown facility with at least twenty years of service in order to comply with the collective bargaining agreement until it expires on May 15, 2008 by tasking them with inventorying property and providing the labor necessary in the transfer of some equipment to the Defendant's other plants.³ *See generally* Bridges Declaration. Finally, in reference to the CSX order of 400 cars mentioned by Ken Bridges in his declaration, *id.* at ¶ 15, the Court will not micro-manage which work

---

³The current membership of the remaining Johnstown workforce as well as the tasks they are assigned are consistent with the intentions of John Carroll and Mark Saylor as voiced by them in the meeting of July 21, 2005: "JC [John Carroll]- We are going to stay smaller workforce [;]20 plus years of service[;] Mark Saylor-We will keep guys working on smaller orders or odd ball cars" Plaintiffs' Ex. p. 4. See also Bridges Declaration, ¶ 7; Anderson Declaration (Document No. 101), ¶ 10 ("Beatty press...run[ing] on a 'swipe shift'-i.e. operating almost 24 hours per day 7 days per week."

6

is to be brought to the Johnstown facility, only that the members of the two subclasses are to be reinstated at that facility.

Finally, the public interest is to be considered. The Plaintiffs submit with the Declaration of John Stember an article of the Johnstown Tribune-Democrat entitled *FreightCar exit adds to Franklin's distress*, dated December 6, 2007 that describes the economic impact "near-shutdown" has had on Franklin Borough, the home of the Defendant's Johnstown facility. Declaration of John Stember, Exhibit 2 (Document No. 92-3). Tax revenues are down for Franklin as the Defendant was its largest employer. *Id.* This fact is added to the public policy of protecting pensions under ERISA. Both facts favor denial of the stay.

Finally, the Defendant implemented furloughs at the Johnstown facility and shifted work to its other facilities, and furloughs at these other facilities may result from the reinstatement order imposed on Johnstown. If this occurs it will be an economic blow to the Danville, Illinois or Roanoke, Virginia communities, but only the Defendant is to blame for it shifted work among these two facilities when its discriminatory furloughs at Johnstown reduced its production force to a minimal number.

Therefore, because the first and fourth factors favor denial of the stay with the second and third factors being balanced among the parties, the Court will deny the Defendant's Emergency Motion for Stay.

With regard to the Plaintiffs' Motion of Civil Contempt, the Court will defer acting upon that motion because the Defendant will now have the opportunity to seek the same type of stay from the Court of Appeals that was denied by this Court today. *See* Federal Rule of Appellate Procedure 8(a)(2). After the Court of Appeals has ruled on that anticipated motion, or alternatively if the Defendant fails

7

to file such a motion with the Court of Appeals, this Court will take appropriate action with regard to the Motion for Civil Contempt.

**AND NOW**, this 11th day of February, 2008, in accordance with the foregoing Memorandum Opinion, IT IS HEREBY ORDERED THAT the Defendant's Emergency Motion for Stay of the January 11, 2008 Preliminary Injunction Order Pending Appeal (Document No. 85) is DENIED and ruling on the Plaintiffs' Motion For Civil Contempt (Document No. 95) is DEFERRED.

**BY THE COURT:**

*/s/ Kim R. Gibson*

**KIM R. GIBSON,
UNITED STATES DISTRICT COURT**