**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

KENNETH J. SOWERS, )
ANTHONY J. ZANGHI, )
ROBERT A. HAYDEN, JR., )
ROBERT A. HOMYAK on behalf of )
themselves and others similarly situated, ) CIVIL ACTION NO. 3:2007-201
)
Plaintiffs, )
)
v. )
) JUDGE GIBSON
FREIGHTCAR AMERICA, INC., )
)
Defendant. )

**MEMORANDUM OPINION and ORDER OF COURT**

**GIBSON, J.**

This matter comes before the Court on the Joint Motion for Final Approval of Class Action Settlement. The parties filed a Joint Motion for Preliminary Approval of Settlement, Approval of Proposed Notice, and Setting of Fairness Hearing (Document No. 119) and a Stipulation and Agreement of Settlement (Document No. 120) on August 5, 2008. This Court previously set forth its preliminary approval of the settlement in the Order of Court dated August 8, 2008 (Document No. 126). A Second Amended Complaint was filed on November 14, 2008 in order to conform the claims and identity of the parties to the settlement reached. Appropriate public notice was sent to the members of the class and advertised on the Internet as well as the local paper of general circulation, the Johnstown Tribune-Democrat. A fairness hearing on the class action settlement was held on November 17, 2008 and objections were received prior to that hearing and oral statements taken at the hearing from those objectors (or their representatives) whose objections remained outstanding at the time of the hearing.

The parties addressed the objections made, put forth arguments in favor of approval of the class action settlement as well as the outstanding motion for attorneys' fees of Plaintiffs' counsel. Having considered the objections made, the parties' arguments countering those objections and favoring the approval of the settlement and the award of attorneys' fees, the Court will approve the settlement in accordance with its analysis included herein.

Initially, it must be recognized that the Court received arguments in favor of objections to the terms of the settlement. The parties did respond to these various objections with specific arguments as to each group while also arguing that all of the objectors are not members of the class. The Court recognizes the fact that the remaining objectors are not part of the class certified and defined by this Court and set forth in the Second Amended Complaint. These objectors are without standing to challenge the proposed class action settlement before the Court. Only parties to the civil action have standing to object absent "extraordinary circumstances". Federal Rule of Civil Procedure 23(e)(5)("Any class member may object to the proposal if it requires court approval under this subdivision(e); the objection may be withdrawn only with the court's approval"[1]); *see also In re Sunrise Securities Litigation*, 131 F.R.D. 450 (E.D.Pa. 1990)(citing *Gould v. Alleco, Inc.*, 883 F.2d 281 (4th Cir. 1989)); *In re World Health Alternatives, Inc. Securities Litigation*, 2007 WL 1670180 * 1(W.D.Pa. June 8, 2007)(same). Therefore, their objections must be dismissed. These objectors may possess valid claims against the various individuals and organizations involved in the present civil action and upon which they made their objections, but those claims are not claims and those objectors are not parties in the case

[1]The objections withdrawn are not addressed herein as the objectors were not members of the class.

*sub judice*. The Court proceeds to analyze the terms of the proposed class action settlement.

Approval of a class action settlement is within the Court's discretion. *Girsh v. Jepson*, 521 F.2d 153, 156 (3d Cir. 1975). Even in light of an agreement or consent between the parties as to the terms of the settlement, courts must still evaluate whether "the settlement is fair, adequate, and reasonable." *Georgevich v. Strauss*, 772 F.2d 1078, 1085 (3d Cir. 1985)(citations omitted). In this circuit, explanation of any such approval of class action settlement must be set forth on the record by the district court. *Eichenholtz v. Brennan*, 52 F.3d 478, 488 (3d Cir. 1995). Guiding our written evaluation and decision for approval is the *Girsh* court's adoption of a list of factors to be considered by courts when evaluating the fairness of class action settlements from the Second Circuit case of *City of Detroit v. Grinnel Corp.*, 495 F.2d 448, 463 (2d Cir. 1974):

> ". . . (1) the complexity, expense and likely duration of the litigation . . . ; (2) the reaction of the class to the settlement . . . ; (3) the stage of the proceedings and the amount of discovery completed . . . ; (4) the risks of establishing liability . . . ; (5) the risks of establishing damages . . . ; (6) the risks of maintaining the class action through the trial . . . ; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery . . . ; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation . . .."

*Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir. 1975)(citations omitted). The Third Circuit has also recognized the need to utilize additional factors when applicable:

> The *Girsh* factors do not provide an exhaustive list of factors to be considered when reviewing a proposed settlement. In *Prudential*, we held because of a "sea-change in the nature of class actions" since *Girsh* was decided in 1975, district courts should also consider other potentially relevant and appropriate factors, including, among others:
>
> > [T]he maturity of the underlying substantive issues, as measured by the experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other

> factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; the existence and probable outcome of claims by other classes and subclasses; the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved-or likely to be achieved-for other claimants; whether class or subclass members are accorded the right to opt out of the settlement; whether any provisions for attorneys' fees are reasonable; and whether the procedure for processing individual claims under the settlement is fair and reasonable.

*Prudential*, 148 F.3d at 323 (citing Edward H. Cooper, Mass Torts Model, prepared for the Conference on Mass Torts, Mass Torts Working Group, Philadelphia, Pa. (May 1998)); *see also id.* at 324 n. 73 (citing Judge William Schwarzer, Settlement of Mass Tort Class Actions: Order Out of Chaos, 80 Cornell L.Rev. 837, 843-44 (May 1995) and listing other potentially relevant factors).

*In re AT & T Corp.*, 455 F.3d 160, 165 (3d Cir. 2006).

Starting with the first *Girsh* factor, "the complexity, expense and likely duration of the litigation", the Court notes that this matter was quite complex, initially warranting a ninety-nine page opinion in order to resolve the findings of fact and conclusions of law on the issue of the preliminary injunctive relief. The pending request for the Plaintiffs' attorneys fees has been stipulated by the Defendant to the amount of $675,000, an amount that does not reflect the entire attorneys fees charged to date. This matter has already garnered the attention of the Third Circuit who would have considered on interlocutory appeal this Court's ruling regarding the preliminary injunction issued were it not for the parties proposed settlement prior to scheduled argument on that appeal. All of this has occurred over the span of fifteen months with no formal discovery having commenced although the Court approved discovery requests of the Plaintiffs for purposes of the preliminary injunction hearing. It is clear to this Court that the complexity and duration of this litigation would be great if it were to continue and the

concomitant expense in attorneys fees alone for all parties would easily range in the millions of dollars. The experienced counsel leading the parties in this matter have served their clients well and if this civil action proceeded to trial, there is no doubt that the matters in contention would find the parties well represented with the legal issues and factual discovery contested for the foreseeable future. This first factor weighs heavily in favor of settlement.

The second *Girsh* factor, "the reaction of the class to the settlement" is very favorable to settlement. The members of the class have not objected to the class action settlement proposed in this matter. This is not surprising because of the fact that the settlement essentially permits these individuals to qualify for the special pension and deferred pension benefits they sought to attain from the Defendant.

*Girsh*'s th ird factor "the stage of the proceedings and the amount of discovery completed", favor settlement as well. Despite the proposal of settlement even before the formal commencement of discovery, the parties in this matter has progressed to address several complex factual issues and legal matters. A two day preliminary injunction hearing was held in this matter, a lengthy opinion and order from this Court granted the preliminary injunction, an appeal of that order granting the preliminary injunction was taken to the Third Circuit and argument on that appeal was within days of occurring until the attorneys and parties in this matter negotiated a settlement. This Court had ordered limited discovery for the benefit of the Plaintiffs in the preliminary injunction proceedings. *See* Document No. 29. In light of the limitation of remedy to equitable relief in such situations, *see Eichorn v. AT&T Corp.*, 484 F.3d 644, 654-657 (3d Cir. 2007), the exercise engaged in by counsel in addressing the motion for

preliminary injunction certainly revealed to the parties and their counsel the level of involvement this civil action would result in had it proceeded to trial. Therefore, the parties were aware of the nature of their respective claims and defenses and, with this awareness, were well versed to enter into the proposed settlements.

The fourth and fifth factors under *Girsh*, "the risks of establishing liability" and "the risks of establishing damages", favor settlement. This Court found for purposes of its preliminary injunction order that the Plaintiffs did demonstrate a likelihood of success on the merits, see Document No. 83, p. 3, but as the Defendant notes, the Third Circuit in staying implementation of that order may have had it in mind to conclude otherwise. Defendant's Brief (Document No. 135), p. 19. Indeed this Court may have ruled to the contrary on a request for a permanent injunction because of later factual discovery that could have created a different understanding of the facts and circumstances. The uncertainty of the future of this litigation whether in this court or in the court of appeals is apparent. The Plaintiffs through this settlement are obtaining the special pension benefits they sought when they began this litigation. No monetary relief would have been available to the Plaintiffs directly, but only indirectly through any order granting equitable relief requested. *See Eichorn, supra*. Thus, if the Plaintiffs were able to establish liability, the damages would flow indirectly to the Defendant from the fact that it would have to reinstate the class members into employment. Further legal liability may also result to the Defendant should reinstatement be ordered permanently because non-parties to this civil action may cause legal challenges to the reinstatement of employees who have less seniority that those outside of the class. Unrelated legal challenges and issues,

like the settlement between the union and the Defendant may have also not adequately ensured the Plaintiffs' recovery in this matter. Therefore, participation in this civil action was the avenue necessary to ensure the possibility of protecting the rights claimed by the Plaintiffs. However, the uncertainties of litigation could have resulted in a verdict or judgment in favor of the Defendant leaving the Plaintiffs without any equitable relief under ERISA. Certainly, the proposed settlement gives the Plaintiffs the outcome without the risk inherent in proceeding to trial and it also permits the Defendant to end its operations here in Johnstown.

*Girsh*'s sixth factor, "the risks of maintaining the class action through the trial" presents further questions about the future of this civil action had it continued. As reviewed in this Court's opinion on the preliminary injunction matter, the certification of the subclasses in this matter would have mandated an inconsistency in the recall of employees to the Defendant's operations in Johnstown. The Defendant would certainly have fought the enforcement of that order generally, if not specifically through the operation of the subclasses. Ancillary legal issues would have ensued most likely in this civil action because of the Court's Order of January 11, 2008 and the Plaintiff's Motion for Joinder (Document No. 105). With such complicated issues and the possibility of inconsistent treatment of its employees on account of the class certification, the Defendant most certainly would have continued to oppose the subclasses' certification. The definitions of the subclasses were again changed in the Second Amended Complaint filed last week. The future of the subclasses, like the possibility of the outcome of trial and damages is also uncertain, but the settlement brings certainty, finality and satisfaction to all parties involved.

Although the Defendant argues its irrelevancy, the seventh *Girsh* factor is "the ability of the defendants to withstand a greater judgment". The Plaintiffs argue that the Defendant can withstand a greater judgment than that for which the settlement permits. Plaintiff's Brief (Document No. 132), p. 20. The Defendant argues that the fact that it may withstand a greater judgment is irrelevant because the class can only recover to the extent that its claims are successful. Defendant's Brief, p. 20. This may be true, but it should be recognized that settlement brings with it a compromise of one's goals, and if the maximum allowable damages are a goal of litigation, one might settle his claims for less than the damages allowable in order to obtain the certainty of recovery. Here, the recovery is defined by contract and Plaintiffs' return to work and accrual of pension rights under the contract bring with it the defined benefits. The worth of these benefits certainly depends upon the time of plant shutdown or retirement of the employees and the length of each employee's life in retirement status. However, the Defendant is correct to the extent that the Plaintiffs have attained the recovery of their pensions which were allegedly interfered with by the Defendant's actions and further recovery beyond this (unlike settlements in tort actions, for instance personal injury claims, where recovery is not limited by contract) cannot be attained. This factor weighs in favor of settlement as well.

The final two *Girsh* factors, "the range of reasonableness of the settlement fund in light of the best possible recovery" and "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation" favor approval of the settlement. The settlement ensures the security of the special pension and deferred vested pension rights of the subclasses. This is the best possible recovery in light of the *Eichorn* court's reading of 29

U.S.C. § 1132. The risks inherent in litigation should it continue may result in this Court ruling in favor of the Defendant and the Plaintiffs would be left without equitable relief. The proposed settlement ensures security of the subclasses' pensions without having to return them to work; this certainly is beneficial to the Plaintiffs because of the absence of risk and the reward attained that was sought from the beginning.

Additional factors that favor approval of the proposed settlement are the award of attorneys fees. This award of $675,000 in fees is agreed upon by the Defendants and although it does not account for the entirety of the attorneys fees incurred, it is agreed to by class counsel.

Finally, notice was provided to members of the subclasses in accordance with Federal Rule of Civil Procedure 23(c)(2) and was adequate to notify the members of the subclasses of the terms of the settlement and attorneys fees. The notice was conveyed through local publication in the Johnstown Tribune-Democrat Newspaper, through an Internet webpage and direct notice to the class members.

In conclusion the Court finds that the proposed settlement is "fair, adequate and reasonable". *See Georgevich, supra.*

**AND NOW** this 19th day of November, 2008, in accordance with the foregoing Memorandum Opinion and all of the files, records, and proceedings in this matter, the Court enters the following Order and Final Judgment, which is binding upon and inures to the benefit of Plaintiffs Kenneth J. Sowers, Anthony J. Zanghi, Robert A. Hayden, Jr., and Robert A. Homyak, individually and as representatives of the Plaintiff Class (collectively, "Class Representatives"), Defendant Freightcar America, Inc. ("FCA"), and the class described in the following paragraph ("Class").

On, August 8, 2008, this Court amended its prior class certification order and the definition of the certified class to the following:

> Any person who:
>
> (i) Was employed at the Johnstown Facility, was accruing service under the FCA Pension Plan as of May 15, 2008 (whether by reason of active employment or layoff), was hired by the Companies in 1988 or 1989 **and** would achieve age and service credit necessary for a Rule-of-65 Pension or a 70/80 Pension by December 31, 2009 with continued accrual of age and service credit ; **or**
>
> (ii) Was employed at the Johnstown Facility, was accruing service under the FCA Pension Plan as of May 15, 2008 (whether by reason of active employment or layoff), was hired by the Companies in 1988 or 1989, was covered by the Service Arbitration Award, **and** would achieve age and service credit necessary for a Rule-of-65 Pension by May 31, 2010 with continued accrual of age and service credit ; **or**
>
> (iii) Was employed at the Johnstown Facility, was covered by the FCA Pension Plan as of May 15,2008, was on the seniority list as of June 19, 2008 **and** was hired by the Companies between August 16, 2004 and October 11, 2004.

Persons in Sections (i) and (ii) constitute the "Special Pension Subclass." Persons in Section (iii) constitute the "Deferred Vested Pension Subclass."

On August 8, 2008, this Court entered an order granting preliminary approval (the "Preliminary Approval Order") of the settlement memorialized in the parties' proposed Settlement Agreement dated August 5, 2008 ("Settlement Agreement"), and approving the form of Class Notice and directing the manner of delivery.

On November 17, 2008, the Court held a settlement fairness hearing (the "Fairness Hearing"), for which members of the Class had been given appropriate notice. A full and fair opportunity to be heard was given to all persons who requested to be heard in accordance with the Preliminary Approval Order and Class Notice.

Having considered the parties' moving papers, the Settlement Agreement, and all other evidence concerning the Motions,

**IT IS HEREBY ORDERED AND ADJUDGED:**

1. To the extent not otherwise defined herein, all capitalized terms shall have the same meaning as used in the Settlement Agreement.

2. The Court has jurisdiction over the subject matter of this action and over all parties to the action and the Settlement Agreement, including all members of the Class.

3. The Court hereby approves and confirms the settlement embodied in the Settlement Agreement as being fair, reasonable, adequate, and in the best interest of the Class Members.

4. No members of the Class filed objections to the Settlement Agreement, but only non-members of the class have objected. This Court has considered each of those objections and will dismiss all of these outstanding objections.

5. The Court determines that the Settlement Agreement has been negotiated vigorously, in good faith, and at arms-length by Class Representatives and Class Counsel on behalf of the Class Members and further finds that the Class Representatives have acted independently and that their interests are identical to the interests of the Class Members for purposes of

settlement of the action.

6. The Court determines that the Class Notice transmitted to the Class Members pursuant to the Preliminary Approval Order and the Settlement Agreement constituted the best notice practicable under the circumstances and provided individual notice to all members of the Class who could be identified through reasonable efforts. The Class Notice provides valid, adequate, and sufficient notice of, among other things, these proceedings, and the settlement to all persons entitled to such notice. Such notice has fully satisfied the prerequisites and requirements of Fed.R.Civ.P. 23 and the requirements of due process.

7. Attorney's fees and litigation expenses are hereby awarded to Class Counsel in the amount of $675,000 which the Court finds to be fair and reasonable, with such amounts to be paid by FCA to Class Counsel within thirty (30) business days of the Effective Date of the Settlement.

8. Pursuant to Fed.R.Civ.P. 41(a)(2), the Court hereby dismisses this action with prejudice on the merits as to the entire class.

9. Without affecting the finality of this Final Order and Judgment, the Court retains jurisdiction to implement, interpret, or enforce the Final Order and Judgment, the Preliminary Approval Order, and the Settlement Agreement until each act agreed to by all parties has been performed.

**IT IS FURTHER ORDERED THAT JUDGMENT SHALL BE ENTERED ACCORDINGLY.**

**BY THE COURT:**

Kim R. Gibson

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**